UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

JOSE EDUARDO M.,

Plaintiff,

v.

FRANK BISIGNANO, Commissioner of Social Security,[1]

Defendant.

Case No.: 3:25-cv-01039-AHG

**ORDER RESOLVING JOINT MOTION FOR JUDICIAL REVIEW AND REVERSING DECISION OF COMMISSIONER**

**[ECF No. 14]**

Before the Court is Jose Eduardo M. ("Plaintiff") and Frank Bisignano's ("Commissioner" or "Defendant") Joint Motion for Judicial Review of Final Decision of the Commissioner of Social Security ("Joint Motion") pursuant to 42 U.S.C. § 405(g), regarding Plaintiff's request for judicial review of a decision by the Commissioner denying Plaintiff's application for supplemental security income benefits. ECF No. 14.

---

[1] Frank Bisignano became the Commissioner of the Social Security Administration on May 7, 2025. Although Plaintiff originally brought this action against Former Acting Commissioner Lee Dudek, this case may properly proceed against Frank Bisignano pursuant to 42 U.S.C. § 405(g)

After a thorough review of the parties' submissions, the administrative record, and applicable law, the Court resolves the Joint Motion in Plaintiff's favor, **REVERSES** the Commissioner's final decision, and **REMANDS** this action for the calculation and award of benefits.

## I. BACKGROUND

Plaintiff was born in 2001, making him a "younger individual." ECF No. 9, Certified Administrative Record ("AR") 28. He has no past relevant work. AR 28. Plaintiff filed an application for supplemental security income benefits pursuant to Title XVI of the Social Security Act on January 18, 2022, alleging a disability onset date of August 19, 2020. AR 210. The Commissioner denied Plaintiff's claims for benefits upon initial review on May 9, 2022, and again upon reconsideration on August 16, 2022. AR 18, 104. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which took place via videoconference on March 19, 2024. AR 35–61, 129, 138. On May 20, 2024, the ALJ issued an unfavorable decision denying Plaintiff's application. AR 15–33.

On May 30, 2024, Plaintiff requested review of the ALJ's decision by the Appeals Council. AR 8, 10. When the Appeals Council denied Plaintiff's request for review on April 2, 2025, the ALJ's decision became the final decision of the Commissioner. AR 1–6; 42 U.S.C. § 405(h). On April 24, 2025, Plaintiff timely commenced this appeal, seeking judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g). ECF No. 1. The Commissioner filed the Administrative Record on July 21, 2025. ECF No. 9. Pursuant to the Court's briefing schedule, (*see* ECF Nos. 10, 13), the parties timely filed their Joint Motion on January 30, 2026. ECF No. 14. This order follows.

## II. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority[2] to review the Commissioner's decision to deny benefits. The Commissioner's decision will be disturbed

---

[2] The parties consented to proceed before a Magistrate Judge on April 28, 2025. ECF No. 3; General Order 707-A (S.D. Cal. Dec. 12, 2024).

only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010).

Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The standard requires "more than a mere scintilla" of evidence, "but less than a preponderance." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (citation omitted). The standard is "highly deferential." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). Thus, "'[w]here evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Burch v. Barnhart*, 400 F.3d at 676, 679 (9th Cir. 2005)). However, the Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (internal quotation marks omitted)). The ALJ is responsible for determining credibility and resolving conflicts in medical testimony and is also responsible for resolving any ambiguities in the record. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The Court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Id.*; *see also SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.").

The Court may also overturn the Commissioner's denial of benefits if the denial is based on legal error. *Garcia v. Comm'r of Soc. Sec.*, 768 F.3d 925, 929 (9th Cir. 2014). However, even if the Court finds the decision was based on legal error, a court may not reverse an ALJ's decision if the error is harmless, "which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability

/ /

determination." *Id.* at 932 (internal quotations and citation omitted); *see also Burch*, 400 F.3d at 679 (citation omitted).

## III. SUMMARY OF ALJ'S FINDINGS

### A. The Five-Step Evaluation Process

The ALJ follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. § 416.920;[3] *Tackett v. Apfel*, 180 F.3d 1094, 1098–99 (9th Cir. 1999). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled, and the claim is denied. 20 C.F.R.§ 416.920(a)(i).

If the claimant is not currently engaged in substantial gainful activity, the second step requires the ALJ to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities, and which has lasted or is expected to last for a continuous period of at least 12 months; if not, a finding of nondisability is made and the claim is denied. 20 C.F.R. § 416.909 (setting forth the 12-month duration requirement); § 416.920(a)(4)(ii).

At the third step, the Commissioner considers the medical severity of a claimant's impairments. 20 C.F.R. § 416.920(a)(4)(iii). If the claimant has a "severe" impairment or combination of impairments, the third step requires the ALJ to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. § 404, subpart P, appendix 1; if so,

---

[3] Unless otherwise noted, all references to the agency regulations herein are to the regulations in effect at the time of the ALJ's decision. *See, e.g.*, SSR 16-3p, 2017 WL 5180304, at *13 n.27 (Oct. 25, 2017) ("When a Federal court reviews our final decision in a claim, we expect the court will review the final decision using the rules that were in effect at the time we issued the decision under review."); *Anne B. v. Comm'r of Soc. Sec.*, No. 1:18-cv-02146-HZ, 2019 WL 6976034, at *8 (D. Or. Dec. 20, 2019) (collecting cases for the proposition that "[t]he applicable regulations are those in effect at the time the ALJ issued his decision"). The regulations governing Title XVI supplemental security income ("SSI") are located in 20 C.F.R. § § 416.101 *et seq*.

disability is conclusively presumed, and benefits are awarded. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006).

If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the ALJ proceeds to the fourth step of the disability evaluation process. The fourth step requires the ALJ to determine whether the claimant has sufficient residual functional capacity ("RFC") to perform his past work. 20 C.F.R. § 416.920(a)(4)(iv). Therefore, the ALJ must determine the claimant's RFC before moving to step four.

An RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-9p, 1996 WL 374184, at *1 (July 2, 1996). It reflects the most a claimant can do despite his limitations. 20 C.F.R. § 416.945(a)(1); *Smolen v. Chater*, 80 F.3d 1273, 1291 (9th Cir. 1996). An RFC assessment must include an individual's functional limitations or restrictions as a result of all of his impairments—even those that are not severe (*see* 20 C.F.R. § 416.945(a)(2))—and must assess his "work-related abilities on a function-by-function basis." SSR 96-9p, 1996 WL 374184, at *1; *see also Valentine*, 574 F.3d at 690 ("an RFC that fails to take into account a claimant's limitations is defective"). An ALJ errs when he provides an incomplete RFC that ignores or discounts "significant and probative evidence" favorable to a claimant's position. *Hill v. Astrue*, 698 F.3d 1153, 1161–62 (9th Cir. 2012).

An RFC assessment is ultimately an administrative finding reserved to the ALJ. 20 C.F.R. § 416.946(c). However, an RFC determination must be based on all of the relevant evidence, including the diagnoses, treatment, observations, and opinions of medical sources, such as treating and examining physicians. 20 C.F.R. § 416.945(a)(3). A court must uphold an ALJ's RFC assessment when the ALJ has applied the proper legal standards and substantial evidence in the record as a whole supports the decision. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

At step four of the disability analysis, if the ALJ determines a claimant has sufficient RFC to perform past relevant work, the claimant is not disabled, and the claim is denied. 20 C.F.R. § 416.920(a)(4)(iv); *see also Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992). The claimant has the burden of proving that he is unable to perform past relevant work at step four. *Drouin*, 966 F.2d at 1257. If the claimant meets this burden, a *prima facie* case of disability is established. *Id.*

At step five, the burden then shifts to the ALJ to establish that the claimant is not disabled because there is other work existing in "significant numbers" in the national or regional economy the claimant can do, taking into account the claimant's RFC, age, education, and work experience. 20 C.F.R. § 416.920(a)(4)(v). The ALJ usually meets this burden either (1) by the testimony of a vocational expert who assesses the employment potential of a hypothetical individual with all of the claimant's physical and mental limitations that are supported by the record, or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. part 404, subpart P, appendix 2. *Lounsburry*, 468 F.3d at 1114–15; *Hill*, 698 F.3d at 1162. The determination of this issue comprises the fifth and final step in the sequential analysis. *Id.*; *Tackett*, 180 F.3d at 1099.

**B. The ALJ's Application of the Five-Step Process in This Case**

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since his alleged disability onset date of August 19, 2020. AR 20. At step two, the ALJ determined that Plaintiff has the severe impairment of mild aortic stenosis/cardiomyopathy. AR 20. The ALJ found that this impairment significantly limits Plaintiff's ability to perform basic work activities. AR 20. The ALJ determined, due to a lack of objective findings, that Plaintiff has the following non-severe medically determinable impairments: migraine headaches, sinusitis, asthma, hypertension, and optometric papilledema. AR 20–21. The ALJ found that Plaintiff's hypertension was well controlled with medication. AR 21. Likewise, the ALJ found that Plaintiff's asthma was mild and intermittent. AR 21. Regarding Plaintiff's optometric papilledema, the ALJ found no vision-related issues arising from the diagnosis. AR 21. The ALJ also concluded that

the record did not reflect, due to his new medications, that Plaintiff's increased migraine headaches were expected to last 12 months or longer. AR 21. The ALJ found that Plaintiff has an anxiety disorder, but concluded that it was a non-severe medically determinable mental impairment which "did not cause more than minimal limitation in the claimant's ability to perform basic mental work activities." AR 21–23. The ALJ also concluded that autism was solely an allegation and not a medically determinable impairment, because Plaintiff's symptoms cannot be the basis for finding an impairment without any medical evidence or results from diagnostic testing. AR 23.

At step three, the ALJ determined that Plaintiff did not have an impairment that met or medically equaled the severity of one of the impairments in the Listing, noting in particular that he had considered Listings 4.04, 4.04A, 4.04B, and 4.04C. AR 23. The ALJ determined that the medical evidence did not include a stress test or angiography to demonstrate qualifying manifestations, nor that three ischemic episodes had occurred. AR 23.

Between steps three and four, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform medium work as defined in 20 CFR 416.967(c) with the following modifications:

> The claimant can lift, carry, push and/or pull 25 pounds frequently and 50 pounds occasionally. The claimant can sit for 6 hours in an 8-hour workday. The claimant can stand and/or walk for 6 hours in an 8-hour workday. The claimant can frequently climb ramps, stairs, ladders, ropes and scaffolds. The claimant can frequently balance, stoop, kneel, crouch and crawl.

AR 24.

At step four, the ALJ found that Plaintiff has no relevant past work. AR 27. At step five, the ALJ considered that Plaintiff was a "younger individual" as of the alleged disability onset date and has at least a high school education. AR 27. The vocational expert testified that Plaintiff could perform the medium exertion jobs of Packager, Cleaner, and Day Worker. AR 27–28. Though not included in his RFC, the ALJ noted that these jobs would still exist even if Plaintiff had the following limitations:

> the claimant could only understand, remember and carry out simple, routine repetitive tasks with normal breaks every 2 hours; could have no interaction with the general public; occasional work-related, nonpersonal, non-social interaction with coworkers and supervisors involving no more a brief exchange or hand off of work product; could not perform highly time-pressured tasks such as the claimant would be limited to goal-oriented work, not time sensitive strict, production quotas, that is production-rate pace work with strict by-the-minute or by-the-hour production quotas that are frequently and/or constantly monitored by supervisors or that are fast-paced; and could only work in a low stress environment where there are few workplace changes, for example, the claimant would not have to switch from task-to-task regularly, and would only have minimal decision making capabilities, for example, they would be unable to exercise substantial discretion in carrying out those work activities.

AR 28. Based on the vocational expert's testimony, the ALJ concluded that Plaintiff was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy," so therefore Plaintiff was not disabled. AR 28.

## IV. DISCUSSION

Plaintiff brings one claim of error in the Joint Motion, that the ALJ erred in failing to evaluate the vocational impact of Plaintiff's migraine headaches. ECF No. 14 at 2–5.

### A. Whether the ALJ Erred at Step Two

At step two, the ALJ considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). "[T]he step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen*, 80 F.3d at 1290; *see also Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir. 2007) (the step two finding is "merely a threshold determination" that "only raises a prima facie case of a disability"). "An impairment or combination of impairments can be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Smolen*, 80 F.3d at 1296 (citation and quotation marks omitted); *see Winchester v. O'Malley*, No. 23-cv-06239-WHO, 2025 WL 79869, at *8 (N.D. Cal. Jan. 13, 2025) ("That treatment record for migraines—showing persistent complaints, changes in medication, and general adherence

to medication with ongoing complaints—is substantial evidence that the migraines have a more than a 'minimal effect' on her ability to work").

Here, at step two, the ALJ found migraines to be a medically determinable, but non-severe, impairment, reasoning that:

> There is also evidence and testimony the claimant contends with other impairments such as migraine headaches, …. However, there were no significant objective medical findings in the record to support more than minimal limitations on the claimant's ability to perform work activities arising from these claimed impairments…. [T]he claimant has been diagnosed with migraine headaches. That said, as of July 2022, the claimant reported that the frequency of his headaches was one per month on prescribed Maxalt. Similarly, in February 2023, the claimant reported that his headaches improved and occurred less frequent (monthly); and in October 2023, the claimant indicated that his migraines occurred only every 1 to 2 months. In fact, it was not until December 2023 that the claimant reported that his headaches occurred 4 to 5 times per month. At that time the doctor prescribed Ubrelvy and Ondansetron for claimant. With said new medications, the record does not reflect that the claimant's increased headaches were expected to last 12 months or longer.

AR 20–21 (citing AR 514, 700, 704, 736). The medical records cited by the ALJ, however, do not fully support his conclusion. For example, the ALJ cited treatment notes from December 20, 2023, for the proposition that Plaintiff was experiencing migraines "4 to 5 times ***per month***." AR 21 (emphasis added); *see also* AR 26 (ALJ contended that Dr. Silva's and Dr. Padron-Spence's opinions were unpersuasive because "daily headaches … lacks support from the medical record. … it was not until December 2023 that the claimant reported that his headaches were occurring 4 to 5 times *per month, which is still far less than daily*") (emphasis added). However, those December 20, 2023, treatment notes actually stated that Plaintiff experienced migraines 4 to 5 times ***per week***. AR 704. Further, the treatment notes go on to detail that each headache lasted over 8 hours and caused Plaintiff "lost time from activities of daily living." AR 704. The migraines were categorized as "chronic daily." AR 704. Though the ALJ was correct in noting that Plaintiff was prescribed Ubrelvy and Ondansetron, the ALJ did not address treatment notes after the

December 2023 visit that showed that the medications were not working. At Plaintiff's follow-up appointment on January 18, 2024, no changes in the frequency of his migraines were noted, though he had been taking the new medications for approximately one month. AR 708 (Plaintiff still experiencing migraines 4 to 5 times per week). Similarly, Dr. Silva and Dr. Padron-Spence completed questionnaires on January 9, 2024, and February 14, 2024, respectively, that Plaintiff was "continu[ing] to suffer headaches despite prescribed medication." AR 720 (as of January 2024, several weeks after starting new medication, Plaintiff experienced headaches "12 times per month"); AR 718 (as of February 2024, two months after starting new medication, Plaintiff had headaches "daily or almost every day"); *see also* AR 47 (during the March 19, 2024, hearing before the ALJ, Plaintiff's mother observed that the medication prescribed to treat or prevent Plaintiff's migraines was "not working"). As such, the ALJ's conclusion that, "[w]ith said new medications, the record does not reflect that the claimant's increased headaches were expected to last 12 months or longer," is not supported by the record.[4] *See* SSR 19-4p, 2019 WL 4169635, at *6 (Aug. 26, 2019) ("When evidence in the file from an AMS [acceptable medical source] documents ongoing headaches that persist despite treatment, such findings may constitute medical signs that help to establish the presence of an MDI [medically determinable impairment].").

Thus, the Court finds that the ALJ's characterization of Plaintiff's migraines as non-severe is unsupported by substantial evidence. *See Bonnie O. v. Comm'r of Soc. Sec.*, No. 2:24-cv-101-RMP, 2024 WL 4579907, at *4–*5 (E.D. Wash., Oct. 25, 2024) (ALJ's

---

[4] The Court notes that the ALJ's statement is also problematic because "[i]t is well-settled that an ALJ may not render their own medical opinion and is not empowered to independently assess clinical findings." *Copeland v. Bisignano*, No. 23-cv-378-CKO, 2026 WL 1243431, at *5 (E.D. Cal. May 5, 2026); *see, e.g.*, *Banks v. Barnhart*, 434 F. Supp. 2d 800, 805 (C.D. Cal. 2006) ("An ALJ cannot arbitrarily substitute his own judgment for competent medical opinion, and he must not succumb to the temptation to play doctor and make his own independent medical findings").

finding of claimant's migraines as non-severe at step two was error, when ALJ did not address medical records that showed continuing debilitating headaches despite improvement with medication, concluding that the "evidence does not show that Plaintiff's headaches do not significantly inhibit Plaintiff's ability to engage in basic work activities"); *Kathryn F. v. O'Malley*, No. 5:22-cv-02090-SP, 2024 U.S. Dist. LEXIS 56622, at *17 (C.D. Cal. Mar. 27, 2024) ("the record reflects that plaintiff still gets either sporadic or weekly migraine headaches. This was sufficient to pass the de minimis threshold of step two. Therefore, the ALJ erred at step two"); *see also Winchester*, 2025 WL 79869, at *9 ("the record shows Winchester consistently complaining about her history of migraines, current descriptions about the frequency and duration of the migraines, and consistent provision of medicines to attempt to treat the migraines. The ALJ erred in not finding Winchester's migraines severe at Step Two").

It follows that a failure at step two to characterize Plaintiff's migraines as severe would result in a failure at step three to consider whether Plaintiff's migraines were equivalent to the severity of one of the impairments in the Listing. Here, having found Plaintiff's migraines to be non-severe, the ALJ did not discuss migraines at all in step three. AR 23–24. "An ALJ errs in failing to address equivalency of a claimant's migraines with listing 11.02[5] after finding migraines to be a severe impairment at step two." *Bonnie O.*, 2024 WL 4579907, at *4–*5 (finding error at step two when ALJ found migraines non-

---

[5] Though migraines are not a specifically listed impairment, "[t]he Social Security Administration identifies Listing 11.02 (Epilepsy) as the most closely analogous to primary headache disorders." *Valarie T. v. Comm'r of Soc. Sec.*, No. 24-cv-00191-DKG, 2025 WL 894654, at *3 (D. Idaho Mar. 24, 2025); *see* Social Security Administration's Program Operations Manual System (POMS) DI 24505.015(B)(7)(b), Example 2 (describing example of migraines medically equaling Listing 11.02). "To equal Listing 11.02(B), a claimant must have headache events 'at least once a week for at least 3 consecutive months despite adherence to prescribed treatment.' [] To equal Listing 11.02(D), a claimant must have headache events 'at least once every 2 weeks for at least 3 consecutive months despite adherence to prescribed treatment, and marked limitation in one area of functioning.'" *Valarie T.*, 2025 WL 894654, at *4 (quoting SSR 19-4p, 2019 WL 4169635, at *7).

severe and thus did not discuss migraines at step three); *Rader v. Comm'r of Soc. Sec.*, No. 17-cv-00131-CWD, 2018 WL 4087988, at *3–*4 (D. Idaho Aug. 27, 2018) (collecting cases and SSRs, thoroughly summarizing applicable C.F.R. and POMS sections, and concluding that "it is no surprise that an ALJ's failure to specifically consider Listing 11.02 constitutes legal error when a claimant's migraine headaches was found to be a severe impairment at step two").

**B. Whether the ALJ Erred in Discrediting Plaintiff's Headache-Related Symptom Statements**

An ALJ evaluating a claimant's testimony regarding the extent of his symptoms and impairments must follow a two-step inquiry. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). First, an ALJ must assess whether there is objective medical evidence to support the testimony. *Id.* If that is the case, and there is no evidence of malingering, "the ALJ can only reject the claimant's testimony about the severity of the symptoms if he gives 'specific, clear and convincing reasons' for the rejection." *Id.* (quoting *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)).

Next, an ALJ must "specifically identify the testimony she or he finds not to be credible ... and explain what evidence undermines that testimony." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (quoting *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014)). An ALJ may not reject a claimant's subjective complaints based solely on a lack of corroborating medical evidence. *Burch*, 400 F.3d at 680; *see also* 20 C.F.R. § 416.929(c)(2) ("we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work … solely because the available objective medical evidence does not substantiate your statements"). Similarly, an ALJ cannot demand "positive objective medical evidence fully corroborating every allegation within the subjective testimony" or "rely on an absence of positive medical evidence to discredit a claimant's subjective symptom testimony." *Ferguson v. O'Malley*, 95 F.4th 1194, 1200–01 (9th Cir. 2024) (emphasis omitted). An ALJ's decision must be "sufficiently specific to allow a reviewing

court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not 'arbitrarily discredit a claimant's testimony.'" *Bunnell v. Sullivan*, 947 F.2d 341, 345–46 (9th Cir. 1991).[6] If the ALJ fails to meet these requirements for specificity, the Court is not free to fill in the gaps. *Lambert*, 980 F.3d at 1278.

Here, the ALJ made a boilerplate statement regarding Plaintiff's testimony that is commonly found in ALJ decisions:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]

AR 24. Courts have found this same language to be too general and boilerplate to satisfy the requirement that an ALJ identify the testimony of the claimant that should be discredited. In *Lambert*, for example, the Ninth Circuit found that identical boilerplate language was insufficient to meet the ALJ's burden:

> The ALJ's decision does not meet the requirements set forth in our cases and does not permit meaningful review. The ALJ noted generically that "the claimant's statements concerning the intensity, persistence and limiting effects of her symptoms are not entirely consistent with the objective medical

[6] On March 28, 2016, the Social Security Administration issued new guidance regarding how to evaluate a claimant's subjective symptom testimony. *See* SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016); 2017 WL 5180304 (Oct. 25, 2017) (clarifying SSR 16-3p). Additionally, effective March 27, 2017, the Social Security Administration updated the relevant agency regulations regarding how a claimant's symptoms are evaluated. *See* 20 C.F.R. § 404.1529. Although the ALJ's opinion was issued after these changes, the jurisprudence governing the applicable two-step inquiry remains good law. *See, e.g.*, *Campbell v. Saul*, 848 F. App'x 718, 721 (9th Cir. 2021) (applying the two-step inquiry in a recent case appealing an ALJ's decision from 2018, in which the newer regulations were applied); *Vooge v. Saul*, 840 F. App'x 253, 254 (9th Cir. 2021) (same, in case involving an ALJ's opinion issued in January 2019); *see also Trevizo v. Berryhill*, 871 F.3d 664, 678 n.5 (9th Cir. 2017) (noting SSR 16-3p is consistent with existing Ninth Circuit precedent regarding the ALJ's assessments of an individual's testimony).

> and other evidence in the record for the reasons explained in the decision." But this boilerplate statement by way of introductory remark, which is routinely included in ALJ decisions denying benefits, did not identify what parts of the claimant's testimony were not credible and why.

980 F.3d at 1277 (brackets and some internal quotation marks omitted); *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (general statement that testimony is "inconsistent in some unspecified way" is insufficient); *Treichler*, 775 F.3d at 1103 (noting that identical boilerplate statement was insufficient because the "ALJ must identify the testimony that was not credible").

The problem with this language is that the phrase "statements concerning the intensity, persistence and limiting effects" is too general a description for the Court to understand precisely what portions of Plaintiff's testimony or statements are claimed to be inconsistent with other evidence in the record.[7] *Isis A. v. Saul*, No. 18-cv-01728-W-MSB, 2019 WL 3554969, at *4 (S.D. Cal. Aug. 5, 2019) ("When an ALJ fails to specify the rejected testimony and how the evidence provides clear and convincing reasons to reject it, the reviewing court cannot proceed without substituting its own conclusions for the ALJ's, or speculating as to the grounds for the ALJ's decision") (brackets and quotation marks omitted).

Though the ALJ addresses Dr. Silva's and Dr. Padron-Spence's opinions regarding Plaintiff's headaches, the ALJ does not address Plaintiff's subjective statements nor the testimony of his mother. The ALJ's selective summary of Plaintiff's medical history, and

---

[7] Though Plaintiff's aortic stenosis is not at issue in the instant motion, the Court notes that the ALJ similarly provided boilerplate language regarding Plaintiff's symptom testimony, which bolsters the point. Though the ALJ stated that "he took into consideration the claimant's statements along with the objective medical evidence" of Plaintiff's aortic stenosis/cardiomyopathy, the ALJ concluded with the following: "That said, the results of physical examinations, the results of diagnostic testing, and the claimant's response to medications, among other evidence is not entirely consistent with the claimant's subjective complaints." AR 27. This statement is likewise too vague to be clear and convincing reasons to discount Plaintiff's symptom testimony.

brief aside that Plaintiff had difficulty answering questions at the hearing, does not rectify the issue here. *Senstad v. Comm'r of Soc. Sec. Admin.*, No. 2:23-cv-2930-DAD-DMC-SS, 2025 WL 1752290, at *3 (E.D. Cal. June 24, 2025) (finding that ALJ failed to provide clear and convincing reasons when he summarized claimant's medical history, noting that "boilerplate language followed by a recitation of medical history is insufficient"); *see Campos v. O'Malley*, No. 1:23-cv-00940-KJM-BAM, 2024 WL 4012015, at *4 (E.D. Cal. Aug. 30, 2024) ("it is not evident from the ALJ's decision if she intended to discount the entirety of Plaintiff's testimony or merely specific portions of that testimony"). This leaves the Court to attempt to ascertain whether the evidence relied on by the ALJ is inconsistent with any, or all, of these symptoms and effects. *Torrez v. Comm'r of Soc. Sec. Admin.*, No. 1:21-cv-00671-CDB, 2025 WL 297774, at *8 (E.D. Cal. Jan. 24, 2025) ("While the Court may be able to draw inferences about what testimony may be inconsistent, the ALJ must identify those inconsistencies with specificity"). That alone is reversible error. *Lambert*, 980 F.3d at 1278.

Though Plaintiff was unsure why he was at the hearing before the ALJ, Plaintiff testified that the reason for the hearing had "something to do with [his] migraines." AR 43–44. Moreover, the medical records show Plaintiff's consistent complaints of debilitating, stress-induced migraines throughout his medical visits. *See, e.g.*, AR 370 (on April 28, 2021, Plaintiff reported that he continued to experience migraine headaches one to two times per month and had a migraine during his echocardiogram that day, despite taking medication daily. His headache "[t]riggers include stress, and he reports increased stress since starting college classes (all online) in February"); AR 514 (on July 19, 2022, Plaintiff reported that he had a migraine a few days prior, which he "thought to be stress induced," and experienced them once per month despite taking medication); AR 736 (on February 1, 2023, Plaintiff reported that his migraines were stress-related and occurred monthly); AR 700 (on October 30, 2023, Plaintiff reported that he continued to have monthly migraines marked by severe nausea, vomiting, aura, and phonophobia, and that Rizatriptan "dulls the pain but doesn't resolve the headache"); AR 704 (on December 20,

2023, Plaintiff reported having stress-related and panic-attack-related, throbbing migraines 4 to 5 times a week, each lasting over 8 hours); AR 708 (on January 18, 2024, Plaintiff reported having stress-related and panic-attack-related, throbbing migraines 4 to 5 times a week, each lasting over 8 hours, despite being prescribed Ubrelvy and Ondansetron); AR 727 (on February 21, 2024, Plaintiff "reports of having migraines twice a week due to [social] anxiety").

Treatment notes "reflecting some level in improvement does not justify the ALJ's failure to acknowledge the numerous medical records showing ongoing issues with severe migraine headaches." *Hay v. Saul*, No. 18-cv-1706-EFB, 2020 WL 2745715, at *9 (E.D. Cal. May 27, 2020) (finding that ALJ erred in rejecting plaintiff's testimony about his headaches). Also, symptoms of chronic migraines can wax and wane, resulting in good days and bad days. *See Christina S. v. Comm'r of Soc. Sec.*, No. C18-5269-JPD, 2019 WL 13205552, at *6 (W.D. Wash. Feb. 21, 2019) (ALJ erred in finding that plaintiff's testimony was inconsistent when "the ALJ failed to adequately account for the waxing and waning nature of plaintiff's migraines"); *Melissa J.R. N. v. Comm'r*, No. 1:21-cv-01099-AA, 2022 WL 17352561, at *4 (D. Or. Nov. 30, 2022) ("Chronic migraines are by nature variable and unpredictable …. Therefore, it is inappropriate for the ALJ to rely on waxing and waning symptoms … to support a conclusion that Plaintiff's allegations are non-persuasive"). Further, even if Plaintiff's migraine symptoms had improved at certain times, the record does not reflect that Plaintiff experienced migraines less than once or twice a month.[8] *See Hahn v. Kijakazi*, 725 F. Supp. 3d 994, 1015 (N.D. Cal. 2024) ("to the extent the ALJ noted that Hahn 'reported improvement of her headaches with medication

---

[8] Q: [If] [t]his person missed two or more days on a consistent basis each and every month, would there be any work for that person?
A: No, that'd be beyond most employers' tolerance and preclude[s] full-time work if that's normally occurring based on my experience.

AR 57 (testimony of vocational expert at hearing).

treatment' and that Hahn's headaches resolved with Meclizine, [] the ALJ did not specify the corresponding effective date or explain why relief from medication is inconsistent with Hahn's migraine testimony"); *see cf. Hay*, 2020 WL 2745715, at *9 (finding ALJ erred in finding that plaintiff was not credible because his symptoms had improved, when the record reflected that, even with medication, plaintiff still had one or two headaches a week).

The Court notes that Defendant's arguments to the contrary are unpersuasive. First, Defendant contends that "the ALJ first appropriately considered that Plaintiff did not pursue aggressive treatment for relief from his allegedly disabling symptoms." ECF No. 14 at 6–7 (citing AR 25). However, the ALJ made no such statements[9] and *post hoc* rationalizations are insufficient. *See Burrell*, 775 F.3d at 1138 ("We are constrained to review the reasons the ALJ asserts."); *see also Ferguson*, 95 F.4th at 1204 ("because the ALJ did not consider Ferguson's conservative treatment when it discounted his subjective symptom testimony, the district court erred when it affirmed the ALJ's decision on that ground"). Defendant also argues that "the ALJ considered that Plaintiff engaged in daily activities that were inconsistent with his alleged impairments, including attending school regularly and exercising at a Planet Fitness." ECF No. 14 at 7 (citing AR 25). However, upon review of the ALJ's opinion, the ALJ's references to attending school and Planet Fitness were not addressing Plaintiff's migraines, or his symptom statements about migraines, they were in regard to his cardiac symptoms. AR 25; *see Ferguson*, 95 F.4th at 1200 ("the ALJ never expressly and specifically stated that Ferguson's *headache* symptom testimony was inconsistent with any particular record evidence, as it was required to do") (emphasis in original). Moreover, the sole notation in the record regarding Plaintiff joining Planet Fitness is from February 2020, (*see* AR 317), and the record includes more recent

[9] To the extent Defendant is referring to the ALJ's notation that "the claimant has not required any additional surgical intervention," this statement references Plaintiff's cardiac impairments, not his migraines. *See* AR 25.

examples of Plaintiff *not* exercising.[10] *See, e.g.*, AR 371 (April 28, 2021, migraines continued, and "not much" exercise); AR 352 (November 17, 2021, ongoing issues with migraines, not much exercise and is sedentary); AR 515 (July 19, 2022, continuing and recent migraines, not much exercise aside from some walking around the house and neighborhood).

**C. Whether the ALJ Erred in Rejecting Plaintiff's Mother's Testimony**

A lay witness's testimony about a claimant's symptoms or how an impairment affects the claimant's ability to work is competent evidence. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). An ALJ may discount such evidence only by providing "reasons germane to each witness." *Id.*; *see also Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012). The Ninth Circuit has not addressed whether the 2017 updates to the Social Security regulations have impacted the standard. *See Stephens v. Kijakazi*, No. 22-35998, 2023 WL 6937296, at *2 (9th Cir. Oct. 20, 2023). It has, however, continued to apply the germane reasons standard. *Hahn*, 725 F. Supp. 3d at 1016 (collecting Ninth Circuit cases); *see Joshua F. v. Comm'r*, No. 24-cv-1767-YY, 2025 U.S. Dist. LEXIS 266508, at *19–*20 (D. Or. Dec. 29, 2025) ("Although the Ninth Circuit has not decided this issue, district courts in this circuit have concluded that the new regulations have not eliminated the requirement that ALJs must consider and address lay witness testimony").

/ /

/ /

---

[10] *See Ignacio P. v. Kijakazi*, No. 22cv1769-MSB, 2024 WL 211797, at *12 (S.D. Cal. Jan. 19, 2024) (finding that the ALJ did not "engage meaningfully" with the record and plaintiff's testimony, concluding that "the ALJ's cherry-picking of certain inconsistencies ignores the record as a whole and is not a clear, convincing, and specific reason for discrediting Plaintiff's testimony"); *see cf. Rachel B. v. Comm'r of Soc. Sec. Admin.*, No. 19cv1574-DWC, 2020 WL 1910410, at *5 (W.D. Wash. Apr. 20, 2020) (when ALJ cherry-picked from the record, court found that the ALJ's decision to discount Plaintiff's testimony was not clear and convincing or supported by substantial evidence).

During the March 19, 2024, hearing before the ALJ, Plaintiff's mother testified[11] that Plaintiff had such severe migraines, which were caused by stress, that she purposefully withheld information from him—like the reason for the hearing or for attending a doctor's appointment—so that he would not become nervous or anxious and trigger migraines. AR 44; *see* AR 58 ("I actually feel uncomfortable [with] him listening to the way I spoke about his situation, because I know once we leave it's going to be a migraine"). She recalled that Plaintiff vomited blood because his migraines were so severe. AR 47, 59. Other times, Plaintiff would be debilitated for four or five hours, would curl up and try to sleep, sometimes to no avail. AR 44; *see also* AR 59 ("he literally has to go to bed, and nobody can talk … [for four hours,] the family freezes"). She explained that an in-person college class caused Plaintiff to break out in a sweat, which then triggered a migraine; so, she converted the majority of his courseload to online classes. AR 45. She also explained that the night before the ALJ's hearing, Plaintiff had to leave art class due to a migraine caused because he struggled drawing a perfect circle. AR 46. She noted that the medication prescribed to treat or prevent Plaintiff's migraines was "not working." AR 47. Ultimately, she opined that obtaining employment would be extremely difficult for Plaintiff. AR 59 ("I sincerely don't feel he can work, because what's going to happen is he'll be on a jobsite, anything can stress him, [such as] if he doesn't do something right … and he's going [to have a] migraine").

---

[11] The record is also replete with examples of Plaintiff's mother making symptom statements during Plaintiff's medical appointments, as she would attend with him. *See* AR 500 (on October 20, 2022, Plaintiff's mother told his doctor that Plaintiff had two migraines in the past two weeks, attributing them to stress, noting that "[h]is migraines have been coming back, however I think its due to the college courses he has been taking[,] … stressing him and that will trigger migraine"); *see e.g.,* AR 381 (January 19, 2021, "the history is provided by the patient and the mother"); AR 486–87 (April 15, 2022, consultative examination, noting that "the source of information for this evaluation was the claimant and his mother," and reiterating later that "this section contains self-reported complaints by the claimant and his mother").

In his opinion, the ALJ did not provide any reasons for discounting—or crediting—Plaintiff's mother's testimony. AR 24. As such, the ALJ erred. *Nicole A.R. v. Comm'r of Soc. Sec.*, No. C26-5299-BAT, 2026 WL 2727931, at *6 (W.D. Wash. Sept. 16, 2026) (finding error when ALJ discounted the testimony of plaintiff's mother, explaining that "[t]he ALJ did not articulate how persuasive he found the lay statement but stated that it reflected similar allegations as made by Plaintiff, which were inconsistent with the overall record"); *see Patrick F. v. Comm'r of Soc. Sec.*, No.C25-966-MLP, 2025 WL 3004607, at *3 (W.D. Wash. Oct. 27, 2025) (finding error when "[t]he ALJ found Plaintiff's mother's testimony inconsistent with the medical evidence, but did not specify which evidence or how it was inconsistent"); *Hahn*, 725 F. Supp. 3d at 1017 (finding error when ALJ failed to give reasons germane to each witness when she rejected the third-party function reports of plaintiff's mother and friends).

**D. The ALJ's Errors Were Not Harmless**

The Court finds the ALJ erred at step two by both failing to find that Plaintiff's migraine headaches are severe and discounting Plaintiff's symptom statements and Plaintiff's mother's testimony in support of the severity of the migraine headaches. *See Sally W. v. Comm'r of Soc. Sec.*, No. C22-5896-BAT, 2023 WL 4073983, at *2 (W.D. Wash. June 20, 2023) (finding harmful error at step two when the ALJ discounted plaintiff's testimony and found migraines were not severe). If an ALJ's error is harmless, his decision will not be reversed. *Molina*, 674 F.3d at 1115. An ALJ's error is harmless where it is "inconsequential to the ultimate nondisability determination." *Id.* (quoting *Carmickle v. Comm'r*, 533 F.3d 1155, 1162 (9th Cir. 2008)). Because the ALJ would have had to consider equivalency with listing 11.02 at step three had he found Plaintiff's migraines severe at step two, may have formulated Plaintiff's RFC differently, asked different hypotheticals to the vocational expert, or reached a different conclusion on the ultimate question of disability, the ALJ's errors were not harmless. *See Bonnie O.*, 2024 WL 4579907, at *5. The Court addresses the appropriate remedy below.

/ /

## IV. THE APPROPRIATE REMEDY

The Court applies the "credit-as-true" rule when determining whether a case should be remanded for payment of benefits or for further proceedings. *Trevizo*, 871 F.3d at 682. That test requires the court to assess three factors: (1) whether "the record has been fully developed and further administrative proceedings would serve no useful purpose;" (2) whether "the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion;" and (3) whether "the ALJ would be required to find the claimant disabled on remand" if the discredited evidence were treated as true. *Id.* at 683 (quoting *Garrison*, 759 F.3d at 1020). If all three factors are present, a court can remand the case for payment of benefits. *Burrell*, 775 F.3d at 1141. Each of these factors weighs in favor of a remand for an award of benefits in this case.

The first factor weighs in favor of a remand for benefits. The record is sufficiently developed and includes Plaintiff's treatment records, administrative medical findings from state agency consultants, and one consultative examination. The second factor weighs in favor of a remand for benefits because, as discussed above, the ALJ failed to provide legally sufficient reasons for finding Plaintiff's migraines non-severe or rejecting Plaintiff's or Plaintiff's mother's testimony. The third factor also weighs in favor of a remand for benefits because the vocational expert testified that there would be no work available if Plaintiff's symptom statements and Plaintiff's mother's testimony had been credited fully. The record is replete with examples of the impacts of Plaintiff's migraines, namely that they are debilitating. *See, e.g.*, AR 44–47, 370, 500, 514, 700, 704, 708, 727, 736. Dr. Silva and Dr. Padron-Spence also stated that a migraine would cause Plaintiff to leave work for the remainder of the day. AR 718, 720; *see* AR 59 (Plaintiff's mother noted that, when Plaintiff had a migraine, all activities came to a halt and he would go to bed). At the hearing, the vocational expert testified that two or more absences per month would "preclude full-time work." AR 57. Here, over the years, Plaintiff had migraines with symptoms often lasting four to eight hours, occurring between twice a month to daily; according to the testimony of the vocational expert, either scenario would preclude full-

time work. *See Bonnie O.*, 2024 WL 4579907, at *5 (finding harmful error at step two when the vocation expert "testified that any absence beyond once per month is work preclusive, [] and Plaintiff's migraine treatment records and testimony regarding her migraine impairment could support greater absenteeism than one day per month"). Remanding for further consideration "would create an unfair 'heads we win; tails, let's play again'" system of disability benefits adjudication" and is unwarranted in light of the record that already exists with respect to Plaintiff's claim for benefits. *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004). This is particularly true here, where the ALJ seemed to cherry-pick portions of the medical record.

Therefore, weighing the applicable factors, the Court finds the appropriate remedy here is to reverse the Commissioner's decision and remand for an immediate award of benefits.

## V. CONCLUSION

Pursuant to sentence four of 42 U.S.C. § 405(g), **IT IS HEREBY ORDERED** that the Commissioner's decision is **REVERSED** and this case is **REMANDED** for the calculation and award of benefits.

The Clerk of Court shall enter judgment in Plaintiff's favor and close this case.

**IT IS SO ORDERED**.

Dated: September 28, 2026

Allison H. Goddard

Honorable Allison H. Goddard
United States Magistrate Judge